HINES, Presiding Justice,
dissenting.
As I disagree with Division 6 (b) of the majority opinion, which affirms the denial of the motion for new trial on the asserted ground of ineffective assistance of counsel based upon the failure to object to the “ultimate issue” testimony of Detective Jackson, I must respectfully dissent.
*759 Although the majority is willing to assume that the quoted testimony of Detective Jackson was improper, and that the failure to object to it was unreasonable, I have no hesitation in finding that it was deficient performance for trial counsel to fail to object to the cited portion of Detective Jackson’s testimony; it was an impermissible comment on the ultimate issue of Pyatt’s guilt regarding the charges of aggravated assault, and resulted in prejudice to Pyatt. For a witness to express an opinion at trial as to the commission of the charged crime clearly invades the province of the jury. Fordham v. State, 254 Ga. 59 (4) (325 SE2d 755) (1985). See also Proctor v. State, 235 Ga. 720, 725-726 (221 SE2d 556) (1975) (The trial court properly excluded an answer to the question “(w)hat charge did you make against the defendant?” as “the only probative value of [the anticipated] response, is the witness’ [sic] opinion at the time he obtained the warrant as to the nature of the appellant’s criminal culpability. This was an ultimate issue for the jury.”)
And, I cannot agree with the majority’s suggestion that trial counsel allowed the testimony to pass without objection in furtherance of a reasonable trial strategy. See footnote 14 of the majority opinion. Rather, when asked during the hearing on the motion for new trial why he did not object, trial counsel testified that he had no strategic reason, but “just missed it.” Although the majority notes that counsel’s cross-examination of Detective Jackson addressed the conflicting versions of reports regarding Pyatt’s initial gunshot, for counsel to call attention to these conflicts does not support a conclusion that counsel would welcome ultimate issue testimony from Detective Jackson, but comports with counsel’s testimony that he “just missed” the fact of ultimate issue testimony. Compare Vanstavern v. State, 293 Ga. 123, 126-127 (3) (c) (744 SE2d 42) (2013), in which trial counsel asked during the cross-examination of the interrogating detective whether, at a certain point of the interrogation, charging the defendant with murder was “a foregone conclusion” as part of counsel’s pursuit of a strategy of undermining the investigation and demonstrating that the detectives summarily dismissed the defendant’s version of events.
Further, my view of Detective Jackson’s testimony on the ultimate issue is different from that of the majority. Although the majority focuses on excerpts of the testimony that suggest a conclusion on Detective Jackson’s part that Pyatt’s first shot constituted an assault because Pyatt shot “at” the car in which Rhodes was driving Broadnax and Perry away, a complete reading of the testimony shows that Detective Jackson took the witnesses’ statements not to be that Pyatt fired “at” the car, but “toward” it, and specifically “over” it, although Detective Jackson would not “get into inches or feet” as to *760 how far over the car the projectile passed. Thus, Detective Jackson told the jury that the act of shooting over the car constituted an assault, intruding on its role of determining whether an aggravated assault had been committed by attempting to cause a violent injury with a firearm.[18]
As to prejudice, I do not agree with the statement in footnote 16 of the majority opinion that Detective Jackson’s testimony that shooting over the car — characterized as a warning shot or not — inured to Pyatt’s benefit; the jury was charged with determining whether Pyatt attempted to cause violent injury by that act, and Detective Jackson told the jury that he did.[19]
The majority further posits that if trial counsel had objecteckfco Detective Jackson’s testimony on the ultimate issue, the trial court might have responded with a curative instruction. But, this overlooks the fact that, faced with a proper objection, it would have been for the trial court’s broad discretion to determine whether granting a mistrial would be essential to preserve Pyatt’s right to a fair trial. Sharp v. State, 286 Ga. 799, 803-804 (5) (692 SE2d 325) (2010). Thus, the majority assumes that had counsel made the necessary objection, the trial court would have exercised its discretion to deny a mistrial, that the court would have nonetheless given proper curative instructions, and that these hypothetical curative instructions would have been adequate to remove from the jury’s consideration the inadmissible ultimate issue testimony. In my view, these are simply too many speculative and vague actions for this Court to assume and rely upon in remedying the situation. Although the burden placed on one who claims that he was denied the effective assistance of trial counsel is a heavy one, Black v. State, 296 Ga. 658, 662 (2) (769 SE2d 898) *761 (2015), I believe that it has been met here; there is a reasonable probability that the jury considered the improper testimony in its deliberation of all aggravated assault charges, including the fatal shooting. Id. What is more, the majority’s hypothetical scenario makes the burden placed upon Pyatt not merely arduous, but insurmountable. In light of the direct relationship of Detective Jackson’s testimony to the ultimate determination of guilt by the jury, I cannot conclude that it is highly probable that the improper evidence did not contribute to the jury’s verdicts. See McCartney v. State, 262 Ga. 156, 159 (1) (414 SE2d 227) (1992), overruled on other grounds, Linson v. State, 287 Ga. 881, 886 (4) (700 SE2d 394) (2010). Compare Bridges v. State, 286 Ga. 535, 540 (5) (690 SE2d 136) (2010).
Decided March 25, 2016.
Bentley C. Adams III, for appellant.
Julia F. Slater, District Attorney, Robert B. Bickerstaff II, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.
Further, I do not agree with the majority’s conclusion that Detective Jackson’s testimony regarding the ultimate issue went only to Pyatt’s convictions for the aggravated assaults of Perry and Broadnax. See footnote 17 of the majority opinion. Because Detective Jackson testified that firing the gunshot over the car was an act of aggravated assault, and the fatal assault underlying the felony murder as alleged was based upon an act of firing the pistol in the direction of the car, the ultimate issue testimony also implicated the charge of felony murder based upon an aggravated assault upon Rhodes. Thus, Jackson’s testimony “went to the very heart of the case,” Fordham, supra, as to all the charges of which Pyatt was found guilty. As there is a reasonable probability that the jury considered the improper testimony in its deliberation of all aggravated assault charges, including the fatal shooting, Pyatt should be retried as to all charges.
I am authorized to state that Justice Benham and Justice Hunstein join in this dissent.

 As to aggravated assault, the jury was instructed that:
A person commits the offense of aggravated assault when that person assaults another with a deadly weapon. To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim. The State must also prove as a material element of aggravated assault, such as alleged in this case, that the assault was made with a deadly weapon that, when used offensively against a person, is likely to or actually does result in serious bodily injury. A firearm, when used as such, is a deadly weapon as a matter of law.
The jury was not instructed that an assault could be committed by an act that places another in reasonable apprehension of receiving a violent injury. See OCGA § 16-5-20 (a) (2).

 The indictment charged Pyatt with: Count 1 - the malice murder of Rhodes; Count 2 - the felony murder of Rhodes while in the commission of the crime of aggravated assault by shooting him with a firearm; Count 3 — the aggravated assault of Rhodes by making an assault upon his person with a handgun; Count 4 - the aggravated assault of Perry by making an assault upon her person with a handgun; and Count 5 - the aggravated assault of Broadnax by making an assault upon her person with a handgun.